IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BYRON SUMMERSVILLE,

    Petitioner,   No. 2: 11-cv-00112 CKD P

  vs.

GARY SWARTHOUT, Warden, et al.,

    Respondents.   ORDER

_____

    Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 along with an application to proceed in forma pauperis.

    Examination of the in forma pauperis application reveals that petitioner is unable to afford the costs of suit. Accordingly, the application to proceed in forma pauperis will be granted. See 28 U.S.C. § 1915(a).

    Petitioner has consented to have a United States Magistrate Judge conduct all further proceedings in this case pursuant to 28 U.S.C. § 636(c)(1).

    Petitioner was convicted of second degree murder and sentenced to 22 years to life imprisonment in 1993. Petitioner does not challenge this conviction. Instead, petitioner challenges the December 2009 decision by the California Board of Parole Hearings ("Board"). First, petitioner alleges that the Board's decision to delay his next parole hearing for three years

pursuant to CAL. PENAL CODE § 3042.5(b) ("Marsy's Law"), violates the Ex Post Facto Clause of the Constitution ("Claim I").  Additionally, petitioner argues that the Board's finding that he was unsuitable for parole violated his due process rights ("Claim II").

Under Rule 4 of the Rules Governing § 2254 Cases, the court must conduct a preliminary review of § 2254 habeas petitions and dismiss any petition where it plainly appears that petitioner is not entitled to relief in this court.  For the reasons set forth below, the petition will be dismissed.

I. SCREENING

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  See 28 U.S.C. § 2254(a).  Also, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)").  It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d).  See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different.  As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the

2

particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (internal citations omitted).

        The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  In other words, the court assumes the state court applied the correct law, and analyzes whether the decision of the state court was based on an objectively unreasonable application of that law.

        It is appropriate to look to lower federal court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law.  "Clearly established" federal law is that determined by the Supreme Court.  Arredondo v. Ortiz, 365 F.3d 778, 782-83 (9th Cir. 2004).  At the same time, it is appropriate to look to lower federal court decisions as persuasive authority in determining what law has been "clearly established" and the reasonableness of a particular application of that law.  See Clark v. Murphy, 331 F.3d 1062 (9th Cir. 2003), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63 (2003); Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999).

## II.  ANALYSIS OF PETITIONER'S CLAIMS

### A.  Claim I

        In Claim I, petitioner asserts that the Board's three-year denial of parole pursuant to Marsy's Law violates the Ex Post Facto Clause.  He asserts that application of Marsy's Law

3

increased the punishment he received when he was sentenced in December 1993.

California voters passed the "Victims' Bill of Rights Act of 2008," otherwise known as "Marsy's Law." Under California law as it existed prior to the enactment of Marsy's Law, indeterminately-sentenced inmates, such as petitioner, were denied parole for one year unless the parole hearing panel found it unreasonable to expect that parole could be granted the following year, in which case the subsequent hearing could be delayed up to five years. See CAL. PENAL CODE § 3041.5(b)(2) (2008). At his 2009 parole hearing, petitioner was subject to the terms of Marsy's Law, which authorizes denial of a subsequent parole hearing for a period of up to fifteen years. See CAL. PENAL CODE § 3041.5(b)(3). The shortest interval that the parole hearing panel may set is three years, applied to petitioner herein, based on a finding that petitioner "does not require a more lengthy period of incarceration . . . than seven additional years." Id. § 3041.5(b)(3)(c).

Petitioner states that he presented his ex post facto claim to all three levels of the California state courts. (See Pet'r's Pet. at p. 7-8.) Petitioner notes that all three courts denied this claim. He attaches a copy of the California Court of Appeal, Fourth Appellate District opinion dated September 3, 2010 as Exhibit A to his federal habeas petition.[1] The Court of Appeal stated as follows in denying Claim I:

> petitioner fails to state a prima facie case that Marsy's Law, enacted in 2008 and amending Penal Code section 3041.5, violates the prohibition against ex post facto laws because it increased the minimum parole denial interval from one to three years. (See California Dept. of Corrections v. Morales (1995) 514 U.S. 499, 501-502, 507-508 [amendment of parole procedures to allow Board to decrease the frequency of parole suitability hearings does not violate ex post facto prohibitions]; Garner v. Jones (2000) 529

---

[1] Petitioner did not attach a copy of the California Supreme Court's decision but states that the California Supreme Court summarily denied his state habeas petition in November 2010. (See Pet'r's Pet. at p. 8.) A court "looks through" a summary denial and presumes it adopted the reasoning of the Court of Appeal. See Bonner v. Carey, 425 F.3d 1145, 1148 n. 13 (9th Cir. 2005) (applying the look-through of Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) to "look through" to the Superior Court's decision because that was the last reasoned decision on the petition).

> U.S. 244; People v. Duvall (1995) 9 Cal.4th 464, 474-475.) Moreover, if petitioner believes that circumstances have changed such that he is suitable for parole before the expiration of the three-year period leading up to his next parole hearing, he may request the Board to exercise its discretion to entertain an earlier hearing. (Pen. Code, § 3041.5, subd. (b)(4).)

(Pet'r's Pet. Ex. A at p. 3.)

Section 2254(d)(1) bars federal habeas relief unless the state courts' decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." The Supreme Court has stated that a law violates the Ex Post Facto Clause if it: (1) punishes as criminal an act that was not criminal when it was committed; (2) makes a crime's punishment greater than when the crime was committed; or (3) deprives a person of a defense available at the time the crime was committed. Collins v. Youngblood, 497 U.S. 37, 52 (1990). A court may find an ex post facto violation if a change in the law "produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 509 (1995). The Court has not articulated a specific formula for "identifying those legislative changes that have a sufficient effect on . . . punishments to fall within the constitutional prohibition on [ex post facto laws]." Id. However, the court has found that changes that create only the most "speculative and attenuated possibility of producing the prohibited effect" of increasing punishment do not run afoul of the ex post facto clause." Id.; see also Garner v. Jones, 529 U.S. 244, 251 (2000) (legislative change to parole rules must at minimum create "significant risk of prolonging . . . incarceration" to constitute a violation of the Ex Post Facto Clause).

The Supreme Court has not directly addressed whether application of Marsy's Law to persons convicted prior to its enactment constitutes the sufficient risk of increased punishment prohibited by the Ex Post Facto Clause. However, the Court has addressed an ex post facto challenge to a change in California law concerning the frequency of parole hearings. In Morales, 514 U.S. at 514, the court found that a 1981 amendment to former section 3041.5,

which increased maximum deferral period of parole suitability hearings to certain individuals from one to three years, did not violate the Ex Post Facto Clause.  Among other things, the court found the fact that an inmate could always seek an expedited hearing if the inmate felt that, between scheduled hearings, circumstances had changed to the point that he or she might at that time be found suitable for parole.  See id. at 512-13.  Considering this fact, the Court found: "there is no reason to conclude that the amendment will have any effect on any prisoner's actual term of confinement . . ."  Id. at 512.

Also, in Garner, 529 U.S. 244, the Court upheld Georgia's change in the frequency of parole hearings for prisoners serving life sentences from three to eight years in the face of an ex post facto challenge.  Again, the Court found it significant that inmates could seek an expedited hearing in the event of a change of circumstances:

> On the record in this case, we cannot conclude the change in Georgia law lengthened respondent's time of actual imprisonment. Georgia law vests broad discretion with the Board, and our analysis rests upon the premise that the Board exercises its discretion in accordance with its assessment of each inmate's likelihood of release between reconsideration dates.  If the assessment later turns out not to hold true for particular inmates, they may invoke the policy the Parole Board has adopted to permit expedited consideration in the event of a change in circumstances.

Id. at 256.

The changes to the frequency of parole hearings are more extensive than in Morales and Garner and can potentially result in subsequent parole hearings occurring as much as fifteen years after the prior hearing.[2]  However, as in Morales and Garner, the Board has the ability to advance a parole suitability hearing when "a change in circumstances or new information" essentially establishes a reasonable likelihood that an inmate will be found suitable for parole.  CAL. PEN. CODE § 3041.5(b)(4).  Indeed, this section was specifically cited by the

---

[2] For a detailed discussion of the differences between the statutes and regulations at issue in Morales, Garner, and in California post-"Marsy's Law," see Gilman v. Schwarzenegger, 638 F.3d 1101, 1107-08 (9th Cir. 2011).

6

Court of Appeal in denying this claim in petitioner's state habeas petition.

After reviewing the facts applicable to petitioner's ex post facto claim, clearly established federal law as determined by the Supreme Court, and California statutes and regulations related to the frequency with which parole hearings occurring after the first parole hearing must be held, the court finds that the state courts' decision rejecting petitioner's Ex Post Facto claim is not contrary to, nor does it involve an unreasonable application of clearly established federal law as determined by the Supreme Court.  Its conclusion is not out of line with decisions reached by the Supreme Court in both Morales and Garner, especially in light of the fact that, as in Morales and Garner, the parole board concerned can expedite a suitability hearing if the board believes it is reasonable to assume that the inmate in question will be paroled.[3]  Thus, Claim I will be dismissed.

    B.  Claim II

In Claim II, petitioner argues that the Board's 2009 decision to deny him parole was an unreasonable application of the "some evidence" standard and an unreasonable determination of the facts in light of the evidence.  Petitioner asserts that California's parole scheme creates a federally protected liberty interest such that his due process rights were violated by the Board's 2009 denial.  Petitioner claims that the totality of the evidence showed that he was not a current risk of danger to society and that he therefore should have been paroled.  (See Pet'r's Mem. P. & A. Supp. Pet. at p. 10.)

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law.  A litigant alleging a due

---

[3] Petitioner is informed that there is a 42 U.S.C. § 1983 class action pending in this court where it is alleged that "Marsy's Law" violates the Ex Post Facto Clause of the Constitution.  The name of the case is Gilman v. Fisher, Civ. No. 05-0830 LKK GGH P and the class of persons identified as plaintiffs in that action consist of California prisoners serving indeterminate sentences, who are eligible for parole and who have been denied parole on one or more occasion.  See Gilman, Civ. No. 05-830, Mar. 4, 2009 Order at p. 9.  It appears petitioner is a member of that class.

7

process violation must first demonstrate that he was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 459-60 (1989).

A protected liberty interest may arise from either the Due Process Clause of the United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). See also Board of Pardons v. Allen, 482 U.S. 369, 373 (1987). The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981); Greenholtz v. Inmates of Neb. Penal, 442 U.S. 1, 7 (1979) (There is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). However, a state's statutory scheme, if it uses mandatory language, "creates a presumption that parole release will be granted" when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest. Greenholtz, 442 U.S. at 12. See also Allen, 482 U.S. at 376-78. In California, a prisoner is entitled to release on parole unless there is "some evidence" of his or her current dangerousness. In re Lawrence, 44 Cal. 4th 1181, 1205-06, 1210, 82 Cal. Rptr. 3d 169, 190 P.3d 525 (2008); In re Rosenkrantz, 29 Cal. 4th 616, 651-53, 128 Cal. Rptr. 2d 104, 59 P.3d 174 (2002).

The landscape of a California state prisoner bringing a due process claim for a denial of parole has changed with the recent United States Supreme Court decision in Swarthout v. Cooke, – U.S. –, 131 S.Ct. 859 (2011) (per curiam). In its decision in Cooke v. Solis, 606 F.3d 1206, 1213 (9th Cir. 2010) rev'd, Swarthout, 131 S.Ct. 859, the Ninth Circuit had held that "California's 'some evidence' requirement is a component of the liberty interest created by the parole system of the state."

\\\\\

1    Swarthout reversed the Ninth Circuit in Cooke. The Supreme Court stated that
2 regarding a California state prisoner's due process rights with respect to parole that:

> [w]hatever liberty interest exists is, of course, a *state* interest created by California law. There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners. When, however, a state creates a liberty interest, the Due Process Clause requires fair procedures for its vindication – and federal courts will review the application of those constitutionally required procedures. In the context of parole, we have held that the procedures required are minimal. In Greenholtz, we found that a prisoner subject to a parole statute similar to California's received adequate process when he was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied. 442 U.S. at 16. "The Constitution," we held, "does not require more." Ibid.

Swarthout, 131 S.Ct. at 862. The Supreme Court continued by explaining that, "[b]ecause the only federal right at issue is procedural, the relevant inquiry is what process [the petitioners] received, not whether the state court decided the case correctly." Id. at 863.

The Supreme Court therefore rejected the Ninth Circuit opinions that went beyond these minimal procedural requirements and "reviewed the state courts' decisions on the merits and concluded that they had unreasonably determined the facts in light of the evidence." Id. at 862. In particular, the Supreme Court rejected the application of the "some evidence" standard to parole decisions by the California courts as a component of the federal due process standard. See id. at 862-63.

Petitioner does not assert in his habeas petition that he was denied an opportunity to be heard or that he was denied a statement of the reasons why parole was denied. In fact, petitioner makes clear in his habeas petition that he was provided these procedural protections. (See Pet'r's Pet. at p. 6.5-6.6 (citing to the parole hearing transcript in stating the reasons given to petitioner by the Board why his parole was denied as well as indicating that petitioner was permitted to be heard at the parole hearing).) Accordingly, petitioner received the process due to him under the Constitution. See Swarthout, 131 S.Ct. at 862. Thus, Claim II will be denied.

9

III.  CONCLUSION

The habeas petition will be summarily dismissed for the reasons discussed in this order.  Should petitioner wish to appeal the court's decision, a certificate of appealability must issue.  See 28 U.S.C. § 2253(c)(1).  A certificate of appealability may issue where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The certificate of appealability must "indicate which specific issue or issues satisfy" the requirement.  28 U.S.C. § 2253(c)(3).

A certificate of appealability should be granted for any issue that petitioner can demonstrate is "'debatable among jurists of reason,'" could be resolved differently by a different court, or is "'adequate to deserve encouragement to proceed further.'"  Jennings v. Woodford, 290 F.3d 1006, 1010 (9th Cir. 2002) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).  In this case, however, petitioner failed to make a substantial showing of the denial of a constitutional right with respect to any issue presented.

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's motion to proceed in forma pauperis (Dkt. No. 4.) is GRANTED;
2. this habeas petition is DISMISSED pursuant to Rule 4 of the Rules Governing § 2254 Cases;
3. a certificate of appealability shall not issue; and
4. the Clerk is ordered to close this case.

Dated: July 18, 2012

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

7
summ0112.some evid_Marsys

10