1

2

3

4

5

6

7

8                  IN THE UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BYRON SUMMERSVILLE,

11            Petitioner,                    No. 2:  11-cv-00112 CKD P

12        vs.

13   GARY SWARTHOUT, Warden, et al.,

14            Respondents.                   ORDER

15   _____

16        Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254 along with an application to proceed in forma pauperis.

18        Examination of the in forma pauperis application reveals that petitioner is unable

19   to afford the costs of suit.  Accordingly, the application to proceed in forma pauperis will be

20   granted.  See 28 U.S.C. § 1915(a).

21         Petitioner has consented to have a United States Magistrate Judge conduct all

22   further proceedings in this case pursuant to 28 U.S.C. § 636(c)(1).

23        Petitioner was convicted of second degree murder and sentenced to 22 years to

24   life imprisonment in 1993.  Petitioner does not challenge this conviction.  Instead, petitioner

25   challenges the December 2009 decision by the California Board of Parole Hearings ("Board").

26   First, petitioner alleges that the Board's decision to delay his next parole hearing for three years

1

1   pursuant to CAL. PENAL CODE § 3042.5(b) ("Marsy's Law"), violates the Ex Post Facto Clause of

2   the Constitution ("Claim I").  Additionally, petitioner argues that the Board's finding that he was

3   unsuitable for parole violated his due process rights ("Claim II").

4        Under Rule 4 of the Rules Governing § 2254 Cases, the court must conduct a

5   preliminary review of § 2254 habeas petitions and dismiss any petition where it plainly appears

6   that petitioner is not entitled to relief in this court.  For the reasons set forth below, the petition

7   will be dismissed.

8                           I.  SCREENING

9        An application for a writ of habeas corpus by a person in custody under a

10  judgment of a state court can be granted only for violations of the Constitution or laws of the

11  United States.  See 28 U.S.C. § 2254(a).  Also, federal habeas corpus relief is not available for

12  any claim decided on the merits in state court proceedings unless the state court's adjudication of

13  the claim:

14          (1) resulted in a decision that was contrary to, or involved an
            unreasonable application of, clearly established federal law, as
15          determined by the Supreme Court of the United States; or

16          (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the
17          State court proceeding.

18  28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)").  It is the habeas petitioner's burden to

19  show he is not precluded from obtaining relief by § 2254(d).  See Woodford v. Visciotti, 537

20  U.S. 19, 25 (2002).

21       The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are

22  different.  As the Supreme Court has explained:

23          A federal habeas court may issue the writ under the "contrary to"
            clause if the state court applies a rule different from the governing
24          law set forth in our cases, or if it decides a case differently than we
            have done on a set of materially indistinguishable facts.  The court
25          may grant relief under the "unreasonable application" clause if the
            state court correctly identifies the governing legal principle from
26          our decisions but unreasonably applies it to the facts of the

                                    2

> particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (internal citations omitted).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  In other words, the court assumes the state court applied the correct law, and analyzes whether the decision of the state court was based on an objectively unreasonable application of that law.

It is appropriate to look to lower federal court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law.  "Clearly established" federal law is that determined by the Supreme Court.  Arredondo v. Ortiz, 365 F.3d 778, 782-83 (9th Cir. 2004).  At the same time, it is appropriate to look to lower federal court decisions as persuasive authority in determining what law has been "clearly established" and the reasonableness of a particular application of that law.  See Clark v. Murphy, 331 F.3d 1062 (9th Cir. 2003), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63 (2003); Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999).

## II.  ANALYSIS OF PETITIONER'S CLAIMS

### A.  Claim I

In Claim I, petitioner asserts that the Board's three-year denial of parole pursuant to Marsy's Law violates the Ex Post Facto Clause.  He asserts that application of Marsy's Law

3

1  increased the punishment he received when he was sentenced in December 1993.

2  California voters passed the "Victims' Bill of Rights Act of 2008," otherwise

3  known as "Marsy's Law."  Under California law as it existed prior to the enactment of Marsy's

4  Law, indeterminately-sentenced inmates, such as petitioner, were denied parole for one year

5  unless the parole hearing panel found it unreasonable to expect that parole could be granted the

6  following year, in which case the subsequent hearing could be delayed up to five years.  See CAL.

7  PENAL CODE § 3041.5(b)(2) (2008).  At his 2009 parole hearing, petitioner was subject to the

8  terms of Marsy's Law, which authorizes denial of a subsequent parole hearing for a period of up

9  to fifteen years.  See CAL. PENAL CODE § 3041.5(b)(3).  The shortest interval that the parole

10  hearing panel may set is three years, applied to petitioner herein, based on a finding that

11  petitioner "does not require a more lengthy period of incarceration . . . than seven additional

12  years."  Id. § 3041.5(b)(3)(c).

13  Petitioner states that he presented his ex post facto claim to all three levels of the

14  California state courts.  (See Pet'r's Pet. at p. 7-8.)  Petitioner notes that all three courts denied

15  this claim.  He attaches a copy of the California Court of Appeal, Fourth Appellate District

16  opinion dated September 3, 2010 as Exhibit A to his federal habeas petition.[1]  The Court of

17  Appeal stated as follows in denying Claim I:

18  petitioner fails to state a prima facie case that Marsy's Law,
    enacted in 2008 and amending Penal Code section 3041.5, violates

19  the prohibition against ex post facto laws because it increased the
    minimum parole denial interval from one to three years.  (See

20  California Dept. of Corrections v. Morales (1995) 514 U.S. 499,
    501-502, 507-508 [amendment of parole procedures to allow

21  Board to decrease the frequency of parole suitability hearings does
    not violate ex post facto prohibitions]; Garner v. Jones (2000) 529

22

23  _____

    [1] Petitioner did not attach a copy of the California Supreme Court's decision but states
    that the California Supreme Court summarily denied his state habeas petition in November 2010.

24  (See Pet'r's Pet. at p. 8.)  A court "looks through" a summary denial and presumes it adopted the
    reasoning of the Court of Appeal.  See Bonner v. Carey, 425 F.3d 1145, 1148 n. 13 (9th Cir.

25  2005) (applying the look-through of Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) to "look
    through" to the Superior Court's decision because that was the last reasoned decision on the

26  petition).

U.S. 244; <u>People v. Duvall</u> (1995) 9 Cal.4th 464, 474-475.)
Moreover, if petitioner believes that circumstances have changed
such that he is suitable for parole before the expiration of the three-
year period leading up to his next parole hearing, he may request
the Board to exercise its discretion to entertain an earlier hearing.
(Pen. Code, § 3041.5, subd. (b)(4).)

(Pet'r's Pet. Ex. A at p. 3.)

Section 2254(d)(1) bars federal habeas relief unless the state courts' decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  The Supreme Court has stated that a law violates the Ex Post Facto Clause if it:  (1) punishes as criminal an act that was not criminal when it was committed; (2) makes a crime's punishment greater than when the crime was committed; or (3) deprives a person of a defense available at the time the crime was committed. <u>Collins v. Youngblood</u>, 497 U.S. 37, 52 (1990).  A court may find an ex post facto violation if a change in the law "produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." <u>Cal. Dep't of Corr. v. Morales</u>, 514 U.S. 499, 509 (1995).  The Court has not articulated a specific formula for "identifying those legislative changes that have a sufficient effect on . . . punishments to fall within the constitutional prohibition on [ex post facto laws]." <u>Id</u>.  However, the court has found that changes that create only the most "speculative and attenuated possibility of producing the prohibited effect" of increasing punishment do not run afoul of the ex post facto clause." <u>Id</u>.; <u>see</u> <u>also</u> <u>Garner v. Jones</u>, 529 U.S. 244, 251 (2000) (legislative change to parole rules must at minimum create "significant risk of prolonging . . . incarceration" to constitute a violation of the Ex Post Facto Clause).

The Supreme Court has not directly addressed whether application of Marsy's Law to persons convicted prior to its enactment constitutes the sufficient risk of increased punishment prohibited by the Ex Post Facto Clause.  However, the Court has addressed an ex post facto challenge to a change in California law concerning the frequency of parole hearings. In <u>Morales</u>, 514 U.S. at 514, the court found that a 1981 amendment to former section 3041.5,

5

1   which increased maximum deferral period of parole suitability hearings to certain individuals

2   from one to three years, did not violate the Ex Post Facto Clause.  Among other things, the court

3   found the fact that an inmate could always seek an expedited hearing if the inmate felt that,

4   between scheduled hearings, circumstances had changed to the point that he or she might at that

5   time be found suitable for parole.  See id. at 512-13.  Considering this fact, the Court found:

6   "there is no reason to conclude that the amendment will have any effect on any prisoner's actual

7   term of confinement . . ."  Id. at 512.

8        Also, in Garner, 529 U.S. 244, the Court upheld Georgia's change in the

9   frequency of parole hearings for prisoners serving life sentences from three to eight years in the

10  face of an ex post facto challenge.  Again, the Court found it significant that inmates could seek

11  an expedited hearing in the event of a change of circumstances:

12          On the record in this case, we cannot conclude the change in
            Georgia law lengthened respondent's time of actual imprisonment.
13          Georgia law vests broad discretion with the Board, and our analysis
            rests upon the premise that the Board exercises its discretion in
14          accordance with its assessment of each inmate's likelihood of
            release between reconsideration dates.  If the assessment later turns
15          out not to hold true for particular inmates, they may invoke the
            policy the Parole Board has adopted to permit expedited
16          consideration in the event of a change in circumstances.

17  Id. at 256.

18       The changes to the frequency of parole hearings are more extensive than in

19  Morales and Garner and can potentially result in subsequent parole hearings occurring as much as

20  fifteen years after the prior hearing.[2]  However, as in Morales and Garner, the Board has the

21  ability to advance a parole suitability hearing when "a change in circumstances or new

22  information" essentially establishes a reasonable likelihood that an inmate will be found suitable

23  for parole.  Cal. Pen. Code § 3041.5(b)(4).  Indeed, this section was specifically cited by the

24

25      [2]  For a detailed discussion of the differences between the statutes and regulations at issue
    in Morales, Garner, and in California post-"Marsy's Law," see Gilman v. Schwarzenegger, 638
26  F.3d 1101, 1107-08 (9th Cir. 2011).

6

1   Court of Appeal in denying this claim in petitioner's state habeas petition.

2          After reviewing the facts applicable to petitioner's ex post facto claim, clearly

3   established federal law as determined by the Supreme Court, and California statutes and

4   regulations related to the frequency with which parole hearings occurring after the first parole

5   hearing must be held, the court finds that the state courts' decision rejecting petitioner's Ex Post

6   Facto claim is not contrary to, nor does it involve an unreasonable application of clearly

7   established federal law as determined by the Supreme Court.  Its conclusion is not out of line with

8   decisions reached by the Supreme Court in both Morales and Garner, especially in light of the fact

9   that, as in Morales and Garner, the parole board concerned can expedite a suitability hearing if the

10  board believes it is reasonable to assume that the inmate in question will be paroled.[3]  Thus, Claim

11  I will be dismissed.

12      B.  Claim II

13         In Claim II, petitioner argues that the Board's 2009 decision to deny him parole

14  was an unreasonable application of the "some evidence" standard and an unreasonable

15  determination of the facts in light of the evidence.  Petitioner asserts that California's parole

16  scheme creates a federally protected liberty interest such that his due process rights were violated

17  by the Board's 2009 denial.  Petitioner claims that the totality of the evidence showed that he was

18  not a current risk of danger to society and that he therefore should have been paroled.  (See Pet'r's

19  Mem. P. & A. Supp. Pet. at p. 10.)

20         The Due Process Clause of the Fourteenth Amendment prohibits state action that

21  deprives a person of life, liberty, or property without due process of law.  A litigant alleging a due

22

23         [3]  Petitioner is informed that there is a 42 U.S.C. § 1983 class action pending in this court
    where it is alleged that "Marsy's Law" violates the Ex Post Facto Clause of the Constitution.
24  The name of the case is Gilman v. Fisher, Civ. No. 05-0830 LKK GGH P and the class of
    persons identified as plaintiffs in that action consist of California prisoners serving indeterminate
25  sentences, who are eligible for parole and who have been denied parole on one or more occasion.
    See Gilman, Civ. No. 05-830, Mar. 4, 2009 Order at p. 9.  It appears petitioner is a member of
26  that class.

process violation must first demonstrate that he was deprived of a liberty or property interest

protected by the Due Process Clause and then show that the procedures attendant upon the

deprivation were not constitutionally sufficient. Ky. Dep't of Corr. v. Thompson, 490 U.S. 454,

459-60 (1989).

A protected liberty interest may arise from either the Due Process Clause of the

United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an

expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221

(2005). See also Board of Pardons v. Allen, 482 U.S. 369, 373 (1987). The United States

Constitution does not, of its own force, create a protected liberty interest in a parole date, even one

that has been set. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981); Greenholtz v. Inmates of Neb.

Penal, 442 U.S. 1, 7 (1979) (There is "no constitutional or inherent right of a convicted person to

be conditionally released before the expiration of a valid sentence."). However, a state's statutory

scheme, if it uses mandatory language, "creates a presumption that parole release will be granted"

when or unless certain designated findings are made, and thereby gives rise to a constitutional

liberty interest. Greenholtz, 442 U.S. at 12. See also Allen, 482 U.S. at 376-78. In California, a

prisoner is entitled to release on parole unless there is "some evidence" of his or her current

dangerousness. In re Lawrence, 44 Cal. 4th 1181, 1205-06, 1210, 82 Cal. Rptr. 3d 169, 190 P.3d

525 (2008); In re Rosenkrantz, 29 Cal. 4th 616, 651-53, 128 Cal. Rptr. 2d 104, 59 P.3d 174

(2002).

The landscape of a California state prisoner bringing a due process claim for a

denial of parole has changed with the recent United States Supreme Court decision in Swarthout

v. Cooke, – U.S. –, 131 S.Ct. 859 (2011) (per curiam). In its decision in Cooke v. Solis, 606 F.3d

1206, 1213 (9th Cir. 2010) rev'd, Swarthout, 131 S.Ct. 859, the Ninth Circuit had held that

"California's 'some evidence' requirement is a component of the liberty interest created by the

parole system of the state."

\\\\\

1    <u>Swarthout</u> reversed the Ninth Circuit in <u>Cooke</u>.  The Supreme Court stated that

2    regarding a California state prisoner's due process rights with respect to parole that:

3    　　　[w]hatever liberty interest exists is, of course, a *state* interest
     created by California law.  There is no right under the Federal
4    Constitution to be conditionally released before the expiration of a
     valid sentence, and the States are under no duty to offer parole to
5    their prisoners.  When, however, a state creates a liberty interest, the
     Due Process Clause requires fair procedures for its vindication –
6    and federal courts will review the application of those
     constitutionally required procedures.  In the context of parole, we
7    have held that the procedures required are minimal.  In <u>Greenholtz</u>,
     we found that a prisoner subject to a parole statute similar to
8    California's received adequate process when he was allowed an
     opportunity to be heard and was provided a statement of the reasons
9    why parole was denied.  442 U.S. at 16.  "The Constitution," we
     held, "does not require more."  <u>Ibid.</u>

10

11   <u>Swarthout</u>, 131 S.Ct. at 862.  The Supreme Court continued by explaining that, "[b]ecause the

12   only federal right at issue is procedural, the relevant inquiry is what process [the petitioners]

13   received, not whether the state court decided the case correctly."  <u>Id.</u> at 863.

14   　　　The Supreme Court therefore rejected the Ninth Circuit opinions that went beyond

15   these minimal procedural requirements and "reviewed the state courts' decisions on the merits and

16   concluded that they had unreasonably determined the facts in light of the evidence."  <u>Id.</u> at 862.  In

17   particular, the Supreme Court rejected the application of the "some evidence" standard to parole

18   decisions by the California courts as a component of the federal due process standard.  <u>See id.</u> at

19   862-63.

20   　　　Petitioner does not assert in his habeas petition that he was denied an opportunity

21   to be heard or that he was denied a statement of the reasons why parole was denied.  In fact,

22   petitioner makes clear in his habeas petition that he was provided these procedural protections.

23   (<u>See</u> Pet'r's Pet. at p. 6.5-6.6 (citing to the parole hearing transcript in stating the reasons given to

24   petitioner by the Board why his parole was denied as well as indicating that petitioner was

25   permitted to be heard at the parole hearing).)  Accordingly, petitioner received the process due to

26   him under the Constitution.  <u>See</u> <u>Swarthout</u>, 131 S.Ct. at 862.  Thus, Claim II will be denied.

III.  CONCLUSION

The habeas petition will be summarily dismissed for the reasons discussed in this order.  Should petitioner wish to appeal the court's decision, a certificate of appealability must issue.  See 28 U.S.C. § 2253(c)(1).  A certificate of appealability may issue where "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The certificate of appealability must "indicate which specific issue or issues satisfy" the requirement.  28 U.S.C. § 2253(c)(3).

A certificate of appealability should be granted for any issue that petitioner can demonstrate is "'debatable among jurists of reason,'" could be resolved differently by a different court, or is "'adequate to deserve encouragement to proceed further.'"  Jennings v. Woodford, 290 F.3d 1006, 1010 (9th Cir. 2002) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).  In this case, however, petitioner failed to make a substantial showing of the denial of a constitutional right with respect to any issue presented.

Accordingly, IT IS HEREBY ORDERED that:

1.  Petitioner's motion to proceed in forma pauperis (Dkt. No. 4.) is GRANTED;

2.  this habeas petition is DISMISSED pursuant to Rule 4 of the Rules Governing § 2254 Cases;

3.  a certificate of appealability shall not issue; and

4.  the Clerk is ordered to close this case.

Dated: July 18, 2012

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

7
summ0112.some evid_Marsys

10